S07A1682. MITCHELL v. THE STATE.
(659 SE2d 356)

HINES, Justice.

Keith Andre Mitchell ("Mitchell") appeals his convictions for felony murder, aggravated assault, and possession of a knife during the commission of a crime, in connection with the death of his wife, Agnes Salandy Mitchell ("Agnes"). For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Mitchell stabbed his wife multiple times. He then changed his clothes and drove to the police station, where he told an officer that he had

---

[1] The crimes occurred on December 1, 2004. On July 20, 2005, a Clayton County grand jury indicted Mitchell for malice murder, felony murder while in the commission of aggravated assault, aggravated assault, and possession of a knife during the commission of the crime of aggravated assault. Mitchell was tried before a jury February 27-March 1, 2006, and found not guilty of malice murder, but guilty on all other counts. On March 1, 2006, the trial court sentenced Mitchell to a term of life in prison for felony murder and a consecutive term of five years in prison for possession of a knife during the commission of a crime; the aggravated assault charge merged with the felony murder. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). On March 17, 2006, Mitchell filed a motion for a new trial, which was denied on October 4, 2006. Mitchell filed a notice of appeal on October 19, 2006, his appeal was docketed in this Court on July 23, 2007, and submitted for decision on September 17, 2007.

stabbed her and she was dead. Mitchell was arrested; he telephoned his sister, and while she testified that he said that he killed his wife because she was nagging and threatening him, a police officer who spoke with Mitchell's sister after the telephone call testified that the sister reported Mitchell saying that he killed Agnes because he was "tired of her nagging."

Agnes's body was found on the floor of the living room of the couple's house; two serrated kitchen knives were found next to the body. One of the knives had blood stains and residue of Agnes's clothing on it; the other knife lay on the floor next to food and a fork, its blade bore the residue of food, and its grip was covered with a napkin. There was a large amount of blood on the living room sofa; the table in front of the sofa had been up-ended, and intermittent drops of blood on the floor led to the kitchen sink. Mitchell's bloody clothes were in a pile on the living room floor. Agnes had been stabbed several times in the chest, including two fatal wounds to the heart; she also had ten defensive wounds on her arms and hands. When Mitchell was arrested the night of the stabbing, he had a half-inch-long cut on the back of the middle finger of his left hand.

Mitchell testified at trial that: he and Agnes argued; she "jumped up" and swung a knife at him, cutting his hand; he ran to the kitchen to get a knife; she chased him into the kitchen; he swung the knife at her; she caught his hand; he caught her hand; the pair began wrestling; they reached the living room sofa; he stabbed her twice in the chest; he held onto her as she fell onto the sofa; he continued to hold onto her as she fell to the floor, and eventually stopped moving; she received the wounds to her hands and arms while they were wrestling; he removed his clothes and put on other clothes; and he went to the police station.

1. Mitchell contends that the evidence was insufficient to support a finding of his guilt on the charge of possession of a knife during the commission of a crime. Under OCGA § 16-11-106 (b), one who commits a crime against the person of another while having "on or within arm's reach of his or her person a firearm or a knife having a blade of three or more inches in length," is guilty of this offense. Mitchell notes that at no time during the trial did any witness testify that the knife used to kill his wife had a blade of any certain length. However, the knife itself was introduced into evidence, and the jury was authorized to use its senses to determine if the knife blade was of the requisite length. *Johnson v. State*, 247 Ga. App. 157, 161 (6) (543 SE2d 439) (2000), overruled on other grounds, *Owens v. State*, 271 Ga. App. 365, 368-369 (3) (609 SE2d 670) (2005). See also *Bruce v. State*, 252 Ga. App. 494, 497-498 (1) (a) (555 SE2d 819) (2001); *White v. State*, 203 Ga. App. 889, 891 (4) (418 SE2d 149) (1992).

Mitchell also asserts that the trial court's instruction to the jury on the crime of possession of a knife during the commission of a crime was faulty because the court instructed the jury that such crime was committed if Mitchell had "on or within arm's reach of his or her person a firearm or a knife having a blade of three or more inches in length" while he committed aggravated assault. This instruction comports with the language of OCGA § 16-11-106 (b). However, as Mitchell notes, the indictment accused Mitchell of possessing a knife having a blade that was "more than three inches in length," not a knife having a blade of "three or more inches in length." Essentially, Mitchell contends that if the jury found that the knife was *exactly* three inches in length, it could have, under the court's instruction, found him guilty in a manner not set forth in the indictment. However, the trial court read the count as it appeared in the indictment to the jury, and instructed the jury that the State must "prove every material allegation of the indictment and every essential element of each crime charged beyond a reasonable doubt." See *Tesfaye v. State*, 275 Ga. 439, 441 (3) (569 SE2d 849) (2002). There is no reasonable probability that the jury could have convicted Mitchell based on the trial court's instructional deviation from the language of the indictment. *Kilpatrick v. State*, 276 Ga. 151, 153-154 (3) (575 SE2d 478) (2003).[2]

The evidence was sufficient to enable a rational trier of fact to find Mitchell guilty beyond a reasonable doubt of all the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Mitchell's sole defense to the charges was that he was justified in using force in self-defense. He asked for, and received, the pattern jury instruction on that affirmative defense. Now, however, he contends that the trial court's instruction was incomplete in that it did not inform the jury that Mitchell had no duty to retreat from an attack. A party cannot invite error by requesting a certain jury instruction, and then complain on appeal that the instruction, when given, is incorrect. *Whatley v. State*, 270 Ga. 296, 300 (10) (d) (509 SE2d 45) (1998); *Patterson v. State*, 233 Ga. 724, 729-730 (7) (213 SE2d 612) (1975).

Further, although Mitchell cites *Johnson v. State*, 253 Ga. 37, 38 (315 SE2d 871) (1984), for the proposition that, since his inclination and ability to retreat were made issues during his direct testimony and cross-examination, an instruction regarding a defendant's duty to retreat was required, even absent a request, *Johnson* does not

---

[2] This case does not present any issue of a fatal variance between the allegata and the probata. See *Jackson v. State*, 267 Ga. 130, 131 (4) (475 SE2d 637) (1996).

control. First, it appears that in *Johnson*, the defendant did not request any instruction on this affirmative defense, see *Johnson v. State*, 169 Ga. App. 194, 197 (312 SE2d 184) (1983) (Quillian, P. J., dissenting), thus, there was no question of inviting error, and the trial court's obligation to charge on the affirmative defense arose solely from the principle that the trial court must instruct the jury on a defendant's sole defense, even absent a request. See *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). Here, Mitchell requested a specific instruction on his sole defense, and that instruction was given. Additionally, Mitchell's claim of self-defense was fairly presented to the jury, and there was no reversible error. *Edmonds v. State*, 275 Ga. 450, 454 (569 SE2d 530) (2002).

3. Finally, Mitchell asserts that the trial court's instruction to the jury on the law of felony murder was confusing because it did not define the word "homicide." Mitchell cites no authority for the proposition that this word requires definition, and we find none. The word is not

> technical or [a] word of art, the meaning of which would not be understood by people of ordinary experience and understanding. On the contrary, the term[ ] used [is an] ordinary term[ ] found in common usage and understood by people of common and ordinary experience. [Cit.]

*Philpot v. State*, 268 Ga. 168, 171 (2) (486 SE2d 158) (1997). The trial court gave the pattern jury instructions on malice murder, felony murder, and aggravated assault, and, viewed as a whole, these instructions were not error. See *Pittman v. State*, 273 Ga. 849, 850-851 (4) (546 SE2d 277) (2001).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 28, 2008.

*Hecht, Mack & Harris, Robert L. Mack, Jr.*, for appellant.
*Jewel C. Scott, District Attorney, Tiffany C. Boulware, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.