## S10A1744. WATSON v. THE STATE.
### (709 SE2d 2)

MELTON, Justice.

Following a jury trial, Benjamin Jarrod Watson was found guilty of felony murder, aggravated assault, and possession of a knife during the commission of a felony in connection with the stabbing death of Nakya Seales.[1] On appeal Watson contends, among other things, that (1) the evidence presented at trial was insufficient to support his convictions; (2) the trial court erred in its charge to the jury and in failing to recharge the jury; (3) his trial counsel was ineffective; and (4) the trial court erred with respect to various evidentiary matters. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence reveals that, on November 29, 2000, Erica Johnson made plans to meet with Seales. Seales was running late, and he left a message on a voice mail system that Johnson shared with her boyfriend, Watson. Johnson and Seales met up and then went to Johnson's mobile home. When they arrived, Watson emerged from one of the bedrooms holding a knife. Watson then walked up to Seales, who was in the living room area, and demanded that Seales leave. Johnson fled out of the back door to a neighbor's house where she called her aunt, Tokyo Rutledge-Smith, and told her that she was worried because Watson was in her home with Seales. Shawn Brunson, a neighbor, was walking by Johnson's home to go visit a fellow neighbor when he witnessed Johnson fleeing her home through the back door. Brunson also heard stomping and loud noises coming from the trailer. As Brunson was on his way back home, he saw Watson come out of the back door of the trailer. Watson

---

[1] On December 19, 2000, Watson was indicted for felony murder, malice murder, aggravated assault, and possession of a knife during the commission of a felony. Following a June 25-28, 2001 jury trial, on June 28, 2001, Watson was found guilty on all charges except malice murder. On that same day, the trial court sentenced Watson to life imprisonment for felony murder and five consecutive years for possession of a knife during the commission of a felony. The aggravated assault count was merged into the felony murder count for sentencing purposes. On January 18, 2008, the trial court granted Watson's motion for leave of court to file an out-of-time motion for a new trial, and Watson filed a motion for new trial on that same day. Watson amended his motion for new trial on April 20, 2009, and April 28, 2009. The trial court denied Watson's motion for new trial on February 9, 2010. On June 17, 2010, the trial court granted Watson's motion to file an out-of-time appeal. Watson's appeal was docketed in this Court for the September 2010 term, and his case was submitted for decision on the briefs.

questioned Brunson as to whether he had seen anyone come out of the back door. Frightened by the blood on Watson's shirt, Brunson said no. As Watson walked away, Brunson could see a knife in Watson's back pocket.

Responding to Johnson's call, Rutledge-Smith saw Watson driving away as she was turning into the trailer park. They both stopped to talk, and Watson told her that it was Seales' blood on his shirt and that he had to cut him to get Seales off of him. Rutledge-Smith asked Watson to go back to Johnson's trailer so they could discuss what had happened. When she and Watson arrived at the trailer, Rutledge-Smith pushed the door open, saw Seales on the floor covered in blood, and called 911. She then waited with Watson until police arrived. When the police got there, they took Watson into custody. Watson admitted to the police that he had killed Seales. At trial, Dr. Whitaker, an expert in forensic crime scene analysis, concluded that Seales had multiple defensive wounds and that the first stab wound had brought Seales down. Dr. Whitaker further concluded that Seales had been held by either his shoulder or head while additional wounds were inflicted and that the final stab wounds to Seales' neck and head occurred while Seales was on the ground.

The evidence outlined above was sufficient to enable a rational trier of fact to find Watson guilty of all the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Watson contends that the trial court erred in refusing to allow three of his potential witnesses to testify at trial. However, the record reveals that these witnesses did not testify because Watson was unable to locate them prior to trial, not because the trial court made any ruling regarding the admissibility of their testimony. This enumeration is therefore waived on appeal (*Butts v. State*, 273 Ga. 760, 771 (31) (546 SE2d 472) (2001) (party's failure to obtain ruling on an issue at trial court level waives review of the issue on appeal)), and is otherwise without merit.

3. Without arguing any specifics in his brief, Watson claims that the trial court erred in denying his motion to suppress his custodial statement to police because his statement was involuntary and had been obtained through trickery. The record reveals, however, that Watson's counsel conceded at the hearing on the motion to suppress that he had "no facts that [he] could point to to show that [Watson's custodial statement to police was] not voluntary based on the testimony [he] heard [at the hearing from police officers indicating that Watson's statement was freely and voluntarily made]." Accordingly, "the trial court did not err in refusing to suppress [Watson's] . . . custodial statement[ ]." *Vergara v. State*, 283 Ga. 175, 181 (1) (657 SE2d 863) (2008).

4. Watson's contention that the trial court erred in denying his motion to suppress evidence obtained in the warrantless search of his automobile is also without merit, as the record reveals that the search of the inside of the automobile was conducted pursuant to a warrant, and that the initial list of the contents of the vehicle was made during a proper inventory search of the vehicle during which no officers actually entered the car. See *Wright v. State*, 276 Ga. 454 (5) (579 SE2d 214) (2003).

5. Watson argues that the trial court erred in admitting testimony at trial regarding prior difficulties between Watson and Seales.[2] However, Watson failed to object to this testimony at trial and has therefore waived review of this issue on appeal. See *Warbington v. State*, 267 Ga. 462 (2) (479 SE2d 733) (1997).

6. Watson urges that the trial court erred in denying his special and general demurrers to the indictment. He claims that the indictment was insufficient in that it did not specifically state that the knife involved in the crime of possession of a knife during the commission of a felony had to have a blade of at least three inches. See OCGA § 16-11-106 (b). However,

> [p]retermitting the propriety of the trial court's rulings, [Watson] cannot show how any insufficiency in the indictment prejudiced [him] so as to require reversal. The record establishes that [Watson] had notice of what [he was] charged with, so that [he] was able to intelligently prepare his defense and be safeguarded against double jeopardy. [Nor has Watson] shown how he was misled to his prejudice by any alleged imperfection in the indictment and we can discern no prejudice in [the] record.

---

[2] We note that Watson's characterization of this testimony later in his brief as "similar transaction" evidence is inaccurate. The evidence here was admitted specifically for the purpose of showing "prior difficulties" between Watson and the victim, and not a "similar transaction." Indeed,

> [u]nlike similar transactions, prior difficulties do not implicate independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such nexus. Thus, the admissibility of evidence of prior difficulties does not depend upon a showing of similarity to the crime for which the accused is being tried. Evidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.

(Citations and punctuation omitted.) *Dixon v. State*, 275 Ga. 232, 232-233 (2) (564 SE2d 198) (2002).

*Mitchell v. State*, 282 Ga. 416, 419 (4) (651 SE2d 49) (2007). See also *State v. Eubanks*, 239 Ga. 483 (238 SE2d 38) (1977) (matters raised by general or special demurrer subject to harmless error analysis). Indeed, the record reveals that the jury was able to physically examine at trial the knife used in the murder in order to determine that the blade involved was more than three inches in length, and Watson therefore could not have been convicted of possession of a knife during the commission of a felony without all of the essential elements of the crime being proven. See *Mitchell v. State*, 283 Ga. 341 (1) (659 SE2d 356) (2008) (because knife used in murder was introduced into evidence, jury was authorized to use its senses to determine if the knife blade was of the requisite length, and evidence was therefore sufficient to sustain conviction for possession of a knife during the commission of a crime even though no witnesses testified as to length of knife used). Moreover, the knife was available for Watson himself to examine during discovery, and Watson was able to intelligently prepare his defense based on the charge as alleged in the indictment. Accordingly, "[a]ny error in failing to try [Watson] upon a 'perfect' indictment was . . . manifestly harmless." (Citation omitted.) *Mitchell*, supra, 282 Ga. at 419 (4).

7. Watson contends that the trial court erred in denying his motion for a mistrial after Johnson testified that she ran to her neighbor's house and told her neighbor that she "believed" that Watson had a knife in his hand at the time that she ran out of the back door of her trailer.[3]

"Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." (Citation and punctuation omitted.) *Childs v. State*, 287 Ga. 488, 492-493 (4) (696 SE2d 670) (2010) (citation omitted). Here, Johnson made the statement at issue, not in response to a question calling for her opinion about what she believed was in Watson's hand, but in response to a question about what she *did* once she exited her trailer and arrived at her neighbor's house. In response to the question, after stating that she was "hysterical" when she arrived at her neighbor's house, Johnson testified that "I said [to my neighbor that Watson's] at the house. [And] I said [to my neighbor that] me and Nakya just walked in the house. [And] I said [to my neighbor that] I believe [Watson] has a knife in his hand." Under such circumstances,

---

[3] The trial court had earlier sustained defense counsel's objection to a portion of Johnson's testimony wherein she claimed that she had seen "something black [in Watson's hand, and she had] assumed it was a knife."

the statement at issue was properly admitted into evidence as part of the res gestae of the incident that was unfolding at Johnson's trailer at the time that she ran out of the back door to go to her neighbor's house. See *Johnson v. State*, 264 Ga. 456, 458 (2) (448 SE2d 177) (1994) ("Acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae") (citation and punctuation omitted). See also *Patel v. State*, 278 Ga. 403, 405 (2) (603 SE2d 237) (2004) ("As long as it is part of the res gestae, a statement of opinion is admissible") (citation omitted). Accordingly, the trial court did not abuse its discretion in denying Watson's motion for a mistrial. See, e.g., *Shouse v. State*, 231 Ga. 716 (8) (203 SE2d 537) (1974).

8. Watson claims that the trial court erred by allowing the State's expert witness on blood spatter evidence to testify as to the location in Johnson's trailer where he believed that the altercation between Watson and Seales began.[4] Watson asserts that such testimony was improper, as it related to the "ultimate issue" to be decided by the jury. However, Watson is incorrect. The record reveals that the expert did not testify regarding the ultimate issue of whether Watson was guilty of the crimes for which he was charged, but only regarding the location where the altercation between Watson and Seales may have taken place based on an analysis of the blood spatter evidence at the crime scene. See, e.g., *Cammon v. State*, 269 Ga. 470, 472 (3) (500 SE2d 329) (1998) ("The ultimate issue in the case was not the trajectory of the bullet, but whether [the defendants] were guilty . . . or not guilty"). In any event, even if the testimony went to the ultimate issue, it would still have been admissible because the analysis of blood spatter evidence is beyond the ken of the average layman. See *Jones v. State*, 287 Ga. 770 (5) (700 SE2d 350) (2010) (witness properly qualified as expert on blood spatter evidence); *Collum v. State*, 281 Ga. 719, 723 (3) (642 SE2d 640) (2007) (expert testimony on issue "beyond the ken of the average layman . . . is admissible even if it goes to the ultimate issue") (citation omitted).

9. As the State correctly concedes, the trial court erred by giving the following charge to the jury:

> You may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of that person's intentional acts. And if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the

---

[4] We note that Watson did not object to the expert's qualifications.

manner in which the weapon or instrumentality is ordinarily used, and thereby causes the death of another human being, you may infer the intent to kill. Whether or not you make any such inference is a matter solely within your discretion as juror.

In *Harris v. State*, 273 Ga. 608, 610 (2) (543 SE2d 716) (2001), this Court held that "the giving of [this] 'use of a deadly weapon' charge is error, whether or not it is accompanied by an instruction that the jury has discretion to make the inference." Even though the giving of such a charge is erroneous, however, the error is harmless where, as here, the defendant is acquitted of malice murder and, instead, convicted of felony murder, and the evidence is otherwise overwhelming to support the intent element of the underlying felony supporting the felony murder conviction. *Oliver v. State*, 274 Ga. 539 (2) (554 SE2d 474) (2001). In this case, Watson was acquitted of malice murder, and the evidence supporting the intent element of the aggravated assault charge that supported Watson's felony murder conviction was overwhelming. The giving of the erroneous charge here was therefore harmless. Id.

10. Watson argues that the trial court erred in failing to recharge the jury on voluntary manslaughter in addition to recharging the jury on malice murder, despite the fact that the jury only requested to be recharged on malice murder. "Where[, as here,] the jury requests further instructions upon a particular phase of the case, the court in his discretion may recharge them in full, or only upon the point or points requested. The court is not bound to repeat all the law favorable to the accused." (Citations and punctuation omitted.) *Williams v. State*, 249 Ga. 6, 9-10 (6) (287 SE2d 31) (1982). We find no error. Id.

11. Watson's argument that the trial court erred in accepting the inconsistent verdicts of guilty on felony murder and not guilty on malice murder is without merit, as this Court has abolished the rule against inconsistent verdicts (see *Milam v. State*, 255 Ga. 560 (341 SE2d 216) (1986)), and the exception to the abolition of this rule would not apply here, as there is nothing in the record that would "make[ ] it clear the jury determined appellant was not guilty of malice murder because the jury found his action in [stabbing] the victim to have been justified." *Turner v. State*, 283 Ga. 17, 21 (2) (655 SE2d 589) (2008).[5]

---

[5] To the extent that Watson argues that the verdicts are erroneous because they are mutually exclusive, this argument is misplaced. "[T]he rule against mutually exclusive verdicts applies to multiple guilty verdicts which cannot be logically reconciled; the rule is not implicated where, as here, verdicts of guilty and not guilty are returned." (Citation omitted.)

12. Watson suggests that his trial attorneys were ineffective in that they (a) failed to adequately investigate the facts and the law, (b) failed to adequately prepare Watson with a cohesive plan of defense, (c) failed to adequately interview potential witnesses for the defense, and (d) failed to properly object to the State's opening and closing statements.

In order to succeed on his claim of ineffective assistance, Watson must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) The record reveals that lead defense counsel and the attorneys in his office conducted research and investigations in Watson's case; that counsel interviewed trial witnesses and used an investigator to find and interview other potential witnesses; and filed several pretrial motions, including a motion to suppress. Watson has not pointed to anything in the record to support his claim that counsel did not adequately investigate the facts and the law relating to his case, and he therefore cannot "overcome the strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." (Citation omitted.) *Judkins v. State*, 282 Ga. 580, 584 (5) (652 SE2d 537) (2007).

(b) Trial counsel testified at the motion for new trial hearing that he met with Watson on several occasions to discuss his case and that he discussed the case with Watson thoroughly. Watson's counsel also discussed trial strategy with him, talked with him about the witnesses who would be good and bad for his case, and discussed using self-defense as their main defense. Evidence supports the trial court's conclusion that trial counsel rendered effective assistance in this regard. See, e.g., *Reed v. State*, 285 Ga. 64 (6) (673 SE2d 246) (2009).

(c) With respect to alleged defense witnesses that trial counsel failed to locate prior to trial, Watson did not call these witnesses to

testify at the motion for new trial hearing.

> [B]ecause [Watson] neither called [these witnesses] to testify at the motion for new trial hearing nor presented a legally acceptable substitute for [their] direct testimony so as to substantiate [his] claim that [the witness'] testimony would have been relevant and favorable to [his] defense, it was impossible for [Watson] to show there is a reasonable probability the results of the proceedings would have been different.

(Citation and punctuation omitted.) *Dickens v. State*, 280 Ga. 320, 323 (2) (627 SE2d 587) (2006).

(d) Watson cites to no portion of the record at trial, nor did he make any specific showing at the motion for new trial hearing, to indicate that improper evidence of his character was somehow introduced during the State's opening or closing statements. He relies only upon his own testimony at the motion for new trial hearing in which he indicates that he was "concerned" that the State brought evidence of his character before the jury without objection from his trial counsel. Because Watson has not supported his specific contention of ineffective assistance with any evidence of record, and because "it is not our job to cull the record on behalf of a party [to find error]" ((citation and punctuation omitted) *Westmoreland v. State*, 287 Ga. 688, 696 (10) (699 SE2d 13) (2010)), Watson's contention is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 25, 2011 —
RECONSIDERATION DISMISSED APRIL 12, 2011.

*Jeffrey L. Grube*, for appellant.

*T. Rabb Wilkerson III, District Attorney, Venita S. McCoy, Jason E. Ashford, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.