## S13A0061. SHAW v. THE STATE.
(742 SE2d 707)

BLACKWELL, Justice.

Anthony Jabbar Shaw was tried by a Cobb County jury and convicted of the murder of Baron Harbin. Following the denial of his motion for new trial, Shaw appeals, contending that the evidence is insufficient to sustain his conviction, that the trial court erred when it failed to charge the jury that one acting in defense of self has no duty to retreat, and that he was denied the effective assistance of counsel. Upon our review of the briefs and record, we find no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Baron and Myra Harbin were married in 2004, had several children, and separated in August 2007. After the separation, Myra lived with Shaw. On June 21, 2009, Baron made arrangements to meet Myra at a gas station to return the children, who had been visiting with Baron. But instead of going to the gas station, Baron drove the children to the apartment that Shaw and Myra shared. When he arrived at the apartment, Baron confronted Shaw and demanded that Shaw leave the apartment and stay away from the children. Shaw then closed the front door of the apartment to Baron and the children, and Baron banged loudly on the door and called for Shaw to come outside.

A neighbor eventually told Baron that he needed to leave, and at that point, Baron went to his car and began to drive away. In the meantime, Shaw retrieved a large knife from the kitchen of the

---

[1] Baron Harbin was killed on June 21, 2009. Shaw was indicted on August 28, 2009, and his trial commenced on February 15, 2010. The jury returned its verdict on February 17, 2010, finding Shaw guilty of malice murder, and he was sentenced to imprisonment for life. Shaw timely filed a motion for new trial on February 23, 2010, and he amended it on September 1, 2011. The trial court denied his motion on October 17, 2011, and on November 1, 2011, the trial court extended the time for Shaw to file a notice of appeal for thirty days. Shaw timely filed a notice of appeal on December 14, 2011, and the case was docketed in this Court for the January 2013 term and orally argued on January 8, 2013.

apartment, exited the apartment through a back door, and approached Baron as he was driving away. Baron stopped and exited his vehicle, and Baron and Shaw then began to scuffle in a manner that a witness later described as "play fighting." The scuffle was, however, quite real. In the course of the scuffle, Baron was heard to say, "[Shaw] stabbed me," and Baron then fell to the ground. Baron, who was unarmed, sustained defensive wounds to his hands and two stab wounds to his chest. One of the stab wounds proved to be fatal.

After Baron was stabbed, a witness said something about calling the police, and Shaw fled from the scene. Along the way, Shaw threw his knife into a wooded area. That evening, Shaw called his uncle and said that he had done a terrible thing. Subsequently, Shaw surrendered to police, at which time he volunteered that he had stabbed Baron, that he had done so to protect himself, and that he had thought Baron was about to reach for "something" at the time he stabbed Baron.

On appeal, Shaw contends that the evidence — especially his own testimony — shows that Baron was the aggressor, establishes that Shaw acted in self-defense, and is insufficient to prove that he acted with the requisite intent to sustain his conviction. But as we have explained before, "[i]t is for a jury to determine from all the facts and circumstances whether a killing is intentional and malicious." *White v. State*, 287 Ga. 713, 715 (1) (b) (699 SE2d 291) (2010) (citation omitted). "Likewise, the issues of witness credibility and justification are for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." Id. (citation omitted). "On appeal[,] this Court does not resolve conflicts in trial testimony or reweigh the evidence." *Hall v. State*, 287 Ga. 755, 756 (1) (699 SE2d 321) (2010) (citation omitted). Viewing the evidence in the light most favorable to the verdict, we conclude that it was sufficient to authorize a rational jury to find beyond a reasonable doubt that Shaw was guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Webb v. State*, 284 Ga. 122, 123 (1) (663 SE2d 690) (2008); *Thompson v. State*, 283 Ga. 581, 581 (1) (662 SE2d 124) (2008).

2. Shaw asserts that the trial court erred when it failed to charge the jury that one acting in defense of self has no duty to retreat.[2] At trial, however, Shaw neither requested a charge on the duty to retreat

---

[2] OCGA § 16-3-23.1 provides:

A person who uses threats or force in accordance with Code Section 16-3-21, relating to the use of force in defense of self or others, Code Section 16-3-23, relating to the use of force in defense of a habitation, or Code Section 16-3-24, relating to the use of force in defense of property other than a habitation, has no duty to retreat and

nor objected when the trial court failed to give such a charge. As such, we review the failure to charge on the duty to retreat only for plain error.[3] *Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012). As we have explained before, a failure to charge amounts to plain error only to the extent that "[the failure to charge] was erroneous, the error was obvious, [the failure to charge] likely affected the outcome of the proceedings, and the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) (citation omitted).

Assuming that a charge on the duty to retreat should have been given by the trial court even without a request, see *Alvelo*, 290 Ga. at 615 (5), plain-error analysis, which must be distinguished from harmless-error analysis, "requires the appellant to make an affirmative showing that the error probably did affect the outcome below. See [*United States v.*] *Olano*, 507 U. S. [725,] 734 (II) (A) [(113 SCt 1770, 123 LE2d 508) (1993)]." *Wagner v. State*, 311 Ga. App. 589, 594, n. 3 (716 SE2d 633) (2011) (Blackwell, J., concurring specially) (cited in *Kelly*, 290 Ga. at 33 (2) (a)) (citation omitted). See also *Jackson v. State*, 321 Ga. App. 607, 613 (2) (739 SE2d 86) (2013). Shaw had a fair opportunity to present evidence of his claim of self-defense through his own testimony at trial. And the trial court charged the jury extensively on self-defense, including the circumstances in which force in defense of self is justified, the reasonableness of a belief that force is necessary, and threats or menaces that may lead to such a reasonable belief. The charges given in this case fairly informed the jury as to the law of self-defense. Having reviewed the entire transcript of the trial, including the entire jury charge, we conclude that

---

has the right to stand his or her ground and use force as provided in said Code sections, including deadly force.

[3] We note that, even where plain error appears, reversal is not warranted if the error was invited by the appellant. *Shank v. State*, 290 Ga. 844, 845 (2) (725 SE2d 246) (2012). Here, Shaw requested a specific charge on self-defense – a charge that said nothing about the duty to retreat – and the trial court gave a charge on self-defense that was substantially identical to the one that Shaw requested. In a previous case, we determined that where the defendant omitted the duty to retreat from his requested charge on self-defense, he could not be heard to complain that the jury instructions were incomplete because they did not touch upon the duty to retreat. *Mitchell v. State*, 283 Ga. 341, 343-344 (2) (659 SE2d 356) (2008) (distinguishing *Johnson v. State*, 253 Ga. 37, 38 (315 SE2d 871) (1984)). But *Mitchell* was tried under the law as it existed prior to enactment of the "plain error" rule in OCGA § 17-8-58 (b), before we adopted the federal "plain error" standard in *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011), and before we explained in *Cheddersingh v. State*, 290 Ga. 680, 682-684 (2) (724 SE2d 366) (2012) "that affirmative waiver, as opposed to mere forfeiture by failing to object, prevents a finding of 'plain error.'" *Shank*, 290 Ga. at 845 (2). In this appeal, we assume without deciding that Shaw did not affirmatively waive a charge on the duty to retreat, we proceed with the usual plain-error analysis, and we do not determine whether *Mitchell* remains viable in the context of plain error or whether Shaw invited any error with respect to the failure of the trial court to charge on the duty to retreat.

Shaw has failed to affirmatively show that the failure to charge on duty to retreat probably affected the outcome of the trial.[4] See *DeLeon v. State*, 289 Ga. 782, 783-784 (4) (716 SE2d 173) (2011); *Edmonds v. State*, 275 Ga. 450, 454 (4) (569 SE2d 530) (2002).

3. Shaw also contends that he was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Shaw must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Shaw must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Shaw must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). We conclude that Shaw has failed to carry his burden.

(a) First, Shaw claims that his lawyer was ineffective because he failed to call the Harbin children as witnesses at trial. According to Shaw, the children could have testified, among other things, that Baron had put a baseball bat and crowbar into the trunk of his vehicle before he drove to his fatal confrontation with Shaw, and such testimony, Shaw says, would have supported the claim that Shaw was merely acting in defense of self. We are not persuaded that the defense lawyer was ineffective in this respect.[5]

---

[4] We note that the issue of retreat was raised, if at all, only obliquely and indirectly at trial, and the prosecuting attorney did not argue that Shaw should have retreated in the incident in which Baron was stabbed. If the prosecuting attorney had made such an argument, our analysis of the likelihood of harm might differ. Cf. *Johnson v. State*, 253 Ga. at 38 (finding harmful error in failure to charge on retreat where the prosecuting attorney argued that the defendant "should have run away").

[5] Shaw also complains that his lawyer never interviewed the children, but Shaw has failed to show what such interviews might have revealed to his lawyer that the lawyer did not already know. After all, the record establishes that the lawyer knew much, if not all, of what the children might say if called to testify, inasmuch as the lawyer spoke with Myra and reviewed discovery, which included a police interview of the children, as he prepared for trial. Though the lawyer did not recall specifically whether he knew at the time of trial that the children could testify about a bat and crowbar in the trunk, Shaw points to no evidence that his lawyer did not know

Although the lawyer conceded at the hearing on the motion for new trial that the children might have been able to offer some helpful testimony, he explained that he decided not to call them as witnesses at trial because much of the helpful testimony they might offer could be elicited from other witnesses,[6] and in any event, the lawyer was concerned about putting the children through the stress of testifying. The reasons given by the lawyer in this case for not calling the children are, we think, reasonable ones. After all, a reasonable lawyer might reasonably worry about the way in which a jury might perceive the defendant putting the children of his victim through the stress of testifying at trial, especially when the children could only offer evidence that was largely cumulative of other evidence adduced at trial. And besides what the lawyer in this case identified as his subjective reasons for not calling the children,[7] a reasonable lawyer might also have concluded that testimony about a baseball bat and crowbar in the trunk — the very testimony that, Shaw contends, should have motivated his lawyer to call the children — would not have been very helpful, considering that Shaw never claimed that he knew Baron had a bat or crowbar, much less that Baron threatened Shaw with a bat or crowbar or wielded such an instrument in his presence. Indeed, Shaw testified at trial, but he said nothing at all about a bat or crowbar and instead claimed that he believed that Baron might have a gun in his pocket.[8]

---

as much. And we cannot know what the discovery furnished by the prosecuting attorney might have revealed to the defense lawyer because Shaw specifically and expressly directed the clerk of the trial court to omit any discovery materials from the record on appeal. Accordingly, we are in no position to assess whether interviews of the children would have revealed anything of significance to the lawyer, and for that reason, Shaw has failed to carry his burden to show ineffectiveness with respect to interviewing the children. See *Chandler v. United States*, 218 F3d 1305, 1314, n. 15 (11th Cir. 2000) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of competent performance]. Therefore, where the record is incomplete or unclear about counsel's actions, we will presume that he did what he should have done . . . ." (citation and punctuation omitted)).

[6] For instance, the lawyer admitted that the children could have testified to the aggressive manner in which Baron drove into the gated apartment complex in which Shaw lived, racing through the gate close behind another vehicle. Evidence of the aggressive entry into the complex was admitted through other witnesses at trial.

[7] As we recently explained, we are not limited in our assessment of the objective reasonableness of lawyer performance to the subjective reasons offered by trial counsel for his conduct. If a reasonable lawyer might have done what the actual lawyer did — whether for the same reasons given by the actual lawyer or different reasons entirely — the actual lawyer cannot be said to have performed in an objectively unreasonable way. See *Jones v. State*, 292 Ga. 593, 600 (7) (d) (740 SE2d 147) (2013).

[8] To the extent that testimony about a bat and crowbar might have been relevant to whether Baron was the aggressor, Shaw concedes on appeal that "[trial c]ounsel did an effective job in showing through both direct and cross-examination of witnesses that [Baron] was clearly the aggressor of the two."

About deficient performance, the United States Supreme Court has explained that we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U. S. at 689 (III) (A) (citation and punctuation omitted). It is settled "that the decision as to which defense witnesses to call is a matter of trial strategy and tactics and that tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances." *Hubbard v. State*, 285 Ga. 791, 794 (3) (683 SE2d 602) (2009) (citations and punctuation omitted). In this case, we cannot say that no competent attorney would have failed to call the children as witnesses at trial, even knowing that the children might testify that Baron put a bat and crowbar in his trunk before his confrontation with Shaw. Accordingly, Shaw has failed to show that his trial lawyer performed in an objectively unreasonable way when the lawyer failed to call the Harbin children as witnesses.[9]

(b) Shaw also claims that his trial lawyer was ineffective because he failed to request a continuance to obtain photographs depicting scrapes that Shaw had on his arm following his scuffle with Baron, photographs of which his lawyer became aware, Shaw says, only when Shaw testified at trial that a detective had taken such photographs.[10] But at the hearing on his motion for new trial, Shaw never asked his lawyer why he did not ask for a continuance to obtain the photographs. As we have explained, when "trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome" the presumption that his conduct was reasonable. *Higginbotham v. State*, 287 Ga. 187, 190-191 (5) (a) (695 SE2d 210) (2010) (citation and punctuation omitted). In the circumstances presented here, a reasonable lawyer might have thought it better to proceed to the close of the evidence without delay, especially since the photographs only depicted "scrapes," and it already was undisputed that Baron and Shaw had scuffled prior to

---

[9] At the hearing on the motion for new trial, Shaw elicited testimony from his trial lawyer that, "[in h]indsight[,] I guess you could go back and say[,] yeah, maybe I should have called [the children]," and Shaw points to this testimony on appeal. We take this opportunity to remind that "hindsight has no place in an assessment of the performance of trial counsel," *Jones*, 292 Ga. at 600 (7) (d), and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim.

[10] The detective inadvertently failed to provide the photographs to the prosecuting attorney before trial, and they were not, therefore, among the discovery furnished to the defense lawyer.

the stabbing. Moreover, a reasonable lawyer might also have assessed the likelihood of the trial court allowing a continuance in the middle of trial as extremely low, considering that Shaw himself obviously had knowledge of the photographs prior to trial. See *Slade v. State*, 270 Ga. 305, 307-308 (2) (509 SE2d 618) (1998). For these reasons, we conclude that Shaw has failed to show that no competent lawyer would have failed to request a continuance in these circumstances, and his claim of ineffectiveness with respect to a continuance has no merit.

(c) Finally, Shaw claims that his trial lawyer was ineffective because he failed to request a jury instruction that, even if Baron was unarmed, hands alone may constitute a deadly weapon.[11] Shaw testified, however, in support of his claim of self-defense that he thought that Baron might have a gun. And the trial court's extensive charges on self-defense, also discussed in Division 2 above, included charges on the use of deadly force to prevent the commission of a forcible felony, the definition of a forcible felony, and the definition of aggravated assault. These charges were "more than sufficient to enable the jury to intelligently consider [Shaw's] defense." *Gear v. State*, 288 Ga. 500, 504 (4) (705 SE2d 632) (2011). Having reviewed the entire jury charge, as well as all the rest of the trial transcript, we conclude that there is no reasonable probability that the outcome of the trial would have differed if the deadly weapon charge about which Shaw complains had been requested and given, and any failure to request this charge, therefore, did not prejudice Shaw, even if his lawyer performed deficiently by failing to request it.[12] See *Gear*, 288 Ga. at 504 (4); *Lewis v. State*, 302 Ga. App. 506, 509-510 (c) (691 SE2d 336) (2010); *Lott v. State*, 281 Ga. App. 373, 376 (4) (636 SE2d 102) (2006).

*Judgment affirmed. All the Justices concur.*

---

[11] Shaw further claims that his trial lawyer was ineffective because the lawyer failed to request a charge on the absence of a duty to retreat. But we have already concluded in Division 2 that Shaw failed to show that the outcome of the proceedings was likely affected by the absence of such a charge. For the same reasons, Shaw cannot demonstrate prejudice sufficient to satisfy the second prong of the *Strickland* standard in the circumstances of this case with respect to the failure to request a charge on the duty to retreat.

[12] Shaw also claims that his trial lawyer was ineffective for failing to preserve other, unspecified objections to the jury charge. But a waiver of objections to a jury charge "falls below an objective standard of reasonableness and therefore constitutes deficient performance only if the charge is objectionable." *Sanders v. State*, 283 Ga. 372, 375 (2) (c) (659 SE2d 376) (2008) (citations and punctuation omitted). Having failed to specify the other objections that, Shaw says, his lawyer should have preserved but did not, Shaw cannot show that the failure to preserve objections generally amounts to ineffective assistance of counsel.

DECIDED MAY 6, 2013.

*Gary W. Jones*, for appellant.

*Patrick H. Head, District Attorney, John R. Edwards, Irvan A. Pearlberg, Daniel J. Quinn, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kenneth W. Mishoe, Assistant Attorney General*, for appellee.