**FIFTH DIVISION**
**MCMILLIAN, P. J.,**
**COOMER, J. and SENIOR APPELLATE JUDGE PHIPPS.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 28, 2019**

# In the Court of Appeals of Georgia

A19A1263. ZAKAS v. JACKSON.

COOMER, Judge.

On September 9, 2014, Blair Zakas was involved in a car accident with Curtis Jackson and his wife Audrey Jackson. On October 30, 2015, the Jacksons filed a complaint against Zakas seeking damages for medical expenses resulting from the accident.[1] During a five-day jury trial in 2018, Zakas admitted liability for the collision, but disputed that she caused Jackson's injuries and also disputed the amount of damages that should have been awarded. The jury awarded Jackson $734,563.78. Zakas appeals the denial of her motion for new trial and argues: (1) the trial court erred by applying the wrong legal standard when it limited the testimony

---

[1] Audrey participated in the case below as a plaintiff. However, she is not a party to this appeal and the issues raised in this Court all pertain to Curtis. Hereinafter "Jackson" refers to Curtis.

of her biomechanical expert and prohibited him from testifying that the force generated in the collision was insufficient to cause the herniated discs in Jackson's neck and back, and (2) the trial court erred in failing to grant her motion for directed verdict on Jackson's claim for future medical expenses. Finding no error, we affirm.

1. Zakas argues that the trial court erred by applying the incorrect legal standard and, as a result, improperly limited the testimony of her biomechanical expert. Specifically, she alleges that the trial court should have allowed the biomechanical expert to testify as to his opinion that the force generated in this collision could not have caused Jackson's spinal injuries. Pretermitting whether the trial court applied the correct standard in limiting the testimony, the record shows that Zakas waived this argument.

Prior to trial, Jackson filed a motion in limine in which he sought to prevent the expert from testifying as to the specific cause of any injury to Jackson. At a hearing on that motion, Zakas's counsel initially stated that he believed that the expert could "testify as to the forces specific to this accident and the forces specific to this accident on Mr. Jackson, as to whether those forces were strong enough or not strong enough to cause the specific claimed injuries in this case." After discussion between the court and the parties, Zakas's counsel altered his position, and said that he did not think he

2

would "ever get to the ultimate question, and that was the whole point, is I don't believe that the question [asked of the expert] will be, based upon your information, knowledge, expertise, was the – were the forces contained in this accident – did they cause the disk herniations as alleged by Mr. Jackson. That question is not the question that's going to be asked." Following the court's ruling that the expert "shall not be permitted to give an opinion about the precise cause of any specific injury," Zakas's counsel responded:

> As long as – I'm okay with that. I guess my clarification is – I didn't – was to making sure that he's able to give his testimony [compliant with the court's order], that will be fine. I don't need him to say it did not – if the concern is [the expert] is going to say it could not have caused, then I think we can work with that."

During trial, Zakas's counsel asked the expert whether "the cervical herniation alleged in this case would have occurred as a result of this accident." After Jackson objected, counsel offered to rephrase the question in order to comply with the court's decision on the motion in limine. At no point did Zakas's counsel argue that the question was consistent with the order on the motion in limine, or ask the trial court

to reconsider its order. Essentially, Zakas's counsel withdrew his question and replaced it with one that complied with the trial court's order.[2]

By representing to the trial court that he would not ask the expert whether "the forces contained in this accident [caused] disk herniations as alleged by Mr. Jackson," and by electing to rephrase his question at trial to comply with the court's prior ruling, we find that Zakas has waived this issue.

> This court has held that no matter how erroneous the ruling might have been (and we express no opinion on this question), a litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of same. He is required to stand his ground and fight in order to successfully enumerate as error an erroneous ruling by the trial judge. Acquiescence completely deprives him of the right to complain further; he has agreed that the trial court's ruling was correct by submitting to it. Failure to object to the procedure amounts to waiver.

*Robinson v. Moonraker Assoc., Ltd.*, 205 Ga. App. 597, 598 (423 SE2d 44) (1992) (citations and punctuation omitted).

Furthermore, when Zakas's counsel's said that he was not going to ask whether "the forces contained in this accident – did they cause the disk herniations

---

[2] Although the expert never answered the question as originally posed, he testified that he believed the force involved in this car accident was 445 pounds on the lumbar spine, and that a lumbar herniation requires 1200 pounds of force.

as alleged by Mr. Jackson," he affirmatively waived plain error review of the issue. Moreover, he also told the trial court after its ruling that he was "okay with that." See *Shaw v. State*, 292 Ga. 871, 873 (2) n. 3 (742 SE2d 707) ("[A]ffirmative waiver, as opposed to mere forfeiture by failing to object, prevents a finding of 'plain error.'" (citation omitted)); *United States v. Rodriguez*, 311 F3d 435, 437 (1st Cir. 2002) ("It is apparent . . . that the appellant consciously waived the issue that he now seeks to debate. . . . A party who identifies an issue, and then explicitly withdraws it, has waived the issue.")

2. Zakas next argues that the trial court erred in failing to grant a directed verdict on Jackson's claim for future medical expenses because Jackson failed to meet his burden of proving future medical costs with a reasonable degree of certainty. We disagree.

"A plaintiff seeking to recover special damages for medical expenses has the burden of proving his losses in such manner as can permit calculation thereof with a reasonable degree of certainty." *Whitley v. Ditta*, 209 Ga. App. 553, 554 (1) (434 SE2d 108) (1993) (citations omitted). "This generally requires evidence that medical expenses in a certain amount were incurred in connection with treatment of the injury involved in the subject litigation." Id. "A directed verdict or j.n.o.v. is

5

required where there is no conflict in the evidence as to any material issues and the evidence (construed in favor of the nonmovant) demands a particular verdict." *Hart v. Shergold*, 295 Ga. App. 94, 96 (1) (670 SE2d 895) (2008) (citations, punctuation, and footnotes omitted). "Thus, the standard of appellate review of a trial court's denial of a motion for directed verdict or of a motion for j.n.o.v. is the any evidence test." Id.

Here, the record supports the jury's award of future medical expenses. Two different doctors testified to Jackson's future medical needs. The first doctor testified that Jackson might need an annual radiofrequency ablation. See *Massie v. Ross*, 211 Ga. App. 354, 354 (1) (439 SE2d 3) (1993) (testimony from doctor that the appellee would "likely require future surgery in order to have a chance at a full recovery" was sufficient to authorize an award of future medical expenses). A "patient ledger" introduced into evidence detailing Jackson's prior medical procedures shows that a radiofrequency ablation costs at least $1210. See *Massie* 211 Ga. App. at 354 (1) (finding sufficient evidence to prove cost of future medical expenses where "appellee introduced into evidence a detailed list outlining her present medical expenses, including the cost of her previous surgeries.").

6

In addition, a second doctor testified – in the form of a medical narrative – that Jackson might require up to four epidurals per year. The epidural injections were recommended if Jackson opted not to have surgery on his back; Jackson did have surgery on his back. However, the first doctor testified that despite the surgery, Jackson was still in pain and would continue to need treatment. Again, documentary evidence shows that each epidural costs $999. Finally, Spine Center Atlanta created a treatment plan for Jackson that stated he would need, inter alia, "yearly SI joint injections." Jackson's "patient ledger" shows that his past SI injections cost $510 each.

This evidence, taken together, was sufficient for the jury to find that Jackson would receive future medical treatment, as well as the costs of those treatments.

*Judgment affirmed. Senior Appellate Judge Herbert E. Phipps concurs. McMillian, P.J. concurs fully in Division 1 and in the judgment only in Division 2.\**

**\*DIVISION 2 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2 (a).**