## S89A0549. GROSS v. THE STATE.
(385 SE2d 674)

GREGORY, Justice.

Appellant Mark Dion Gross appeals his jury convictions of two counts of murder. The trial judge sentenced him to two consecutive life terms. Gross raises seven enumerations of error. We affirm.[1]

1. Though not raised as an error, we find that the facts are sufficient for a rational trier of fact to have found Gross guilty on each of the two murder counts. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The jury could have found the following facts:

When the wife of one of the victims, Ms. Santiago, left their residence, Gross and her husband were in an upstairs bedroom while the other victim, Wayne Peele, was in the living room sitting on the sofa watching television. Ms. Santiago left around 10:20 p.m. Some time after 11:00 p.m., neighbors heard shots coming from Santiago's residence. The police found Santiago in the bedroom of the house. He died from gunshots to his chest and head. The shots were fired from

---

[1] The murders were committed on March 2, 1988. During its May 1988 term, the Cobb County Grand Jury indicted Gross on two counts of murder. A jury trial was held on February 21-28, 1989. The trial court sentenced Gross to two consecutive life terms on February 28, 1989. Gross filed a Motion for New Trial on April 3, 1989, which was amended on August 4, 1989, and which was denied August 8, 1989. This appeal was docketed on September 7, 1989. This Court granted Gross's request for an extension to file his brief, and the case was submitted for a decision on briefs on October 20, 1989.

approximately two feet away. Peele was found in a neighbor's driveway. The physical evidence showed that he had been shot while sitting on the sofa, but he did not die until after he had left the residence and had been shot again. Ms. Santiago reported that several items of jewelry had been stolen.

The State called several witnesses who had seen Gross the day after the double homicide. The witnesses testified that Gross appeared nervous and that he stated his friend "George" had shot the two victims. One of the witnesses testified Gross told him that Gross had had to shoot two people. Also, while talking with investigators after waiving his *Miranda* rights, Gross admitted he had been at Santiago's residence, that he had "committed a great sin and hoped that God would forgive him," and that "Carlos was a faggot who deserved to die."

Gross was arrested in Michigan two days after the homicides. His cell mate, John Robert Thompson, later told investigators that Gross admitted he had committed the homicides and that he had hidden the gun so that he could not be linked to the crime. At trial, Thompson stated that he had made up the story. The State cross-examined Thompson as to his prior statement and then played a recording of Thompson's statement into evidence.

2. Gross raises as his first enumeration the trial court's admission of certain photographs of the victims. He argues that he was denied a fair trial because the photographs were repetitive, inflammatory, and irrelevant as the cause of death was not disputed as to either victim. Although there is some overlap among the pictures showing the victims' gunshot wounds, each picture is different. We find no error in this case. *Strickland v. State*, 247 Ga. 219, 224 (275 SE2d 29) (1981); *Moses v. State*, 245 Ga. 180, 187 (263 SE2d 916) (1980).

3. During the course of the trial, the State played a tape containing a reference to Gross's being arraigned for another crime and a reference to Gross's having stolen some items from Thompson's mother. Gross correctly argues that this impermissibly brought his character into evidence. The error in this instance was cured by the judge's instructions and by his asking the jury panel whether any of them would be unable to strike the testimony from their minds. Furthermore, there was strong evidence of guilt. Therefore, we find no error. *Sabel v. State*, 250 Ga. 640, 644 (300 SE2d 663) (1983).

4. During the trial, the State called Thompson, Gross's cell mate in Michigan, to the stand. As the State began questioning him concerning his statement with regard to certain admissions Gross had made, Thompson stated that he had made up the story and that he did not remember making certain statements. Even after being provided with a seven-page summary, he still claimed that he did not fully remember making all of the statements, though he did remem-

ber some of them. The State then called the detectives, who had taken Thompson's statement, and questioned them concerning the voluntariness of the interview. After laying a foundation, the State played Thompson's recorded interview into evidence.

Gross contends that although Thompson's prior inconsistent statements are admissible as substantive evidence under *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982), the impeachment was completed prior to the introduction of the tape because Thompson had admitted making several of the statements, although he added that he had made them up. We find that the trial court correctly handled the admission of the tape. A review of the transcript shows that Thompson did not fully admit to making all of the statements contained on the tape. Thus, the tape was admissible under *Gibbons*.

5. Gross raises as his fourth enumeration the court's charge and recharge on felony murder, particularly with regard to Santiago. He first contends that the charge was error because he was indicted for malice murder. We find no error because the indictments alleged he had killed a human being by shooting him with a firearm. *Jolley v. State*, 254 Ga. 624, 627 (2) (331 SE2d 516) (1985). The State contends the predicate felony for the felony murder was aggravated assault. Gross contends that the charge was particularly inappropriate as to Santiago because of evidence that Santiago may not have had reasonable apprehension of immediately receiving a violent injury. In finding no error, we note that although the medical examiner testified Santiago was probably asleep when he was shot, he also testified it was possible Santiago was awake. Thus, construing the evidence in favor of the verdict, the jury could have found that Santiago was awake and aware of the aggravated assault.

6. During the course of its deliberations, the trial court received a note from the jury containing several questions. The court called the jury into the courtroom, and the jury reiterated its questions, not repeating the written inquiries as to the definition of "evidence" and the meaning of "beyond a reasonable doubt." The judge recharged the jury on the questions presented orally to the court. The court did not recharge on the meaning of "beyond a reasonable doubt," and the jury did not request that it do so, even after the trial court asked if any questions remained. We find that the trial court did not abuse its discretion in not recharging the jury on the meaning of "beyond a reasonable doubt." See *Litmon v. State*, 186 Ga. App. 762, 763 (368 SE2d 530) (1988).

7. Upon a review of the trial court's charge, we find Gross's remaining enumerations of error to be without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 30, 1989.

*Derek H. Jones,* for appellant.

*Thomas J. Charron, District Attorney, Thomas A. Cole, Assistant District Attorney, Michael J. Bowers, Attorney General, Andrew S. Ree,* for appellee.