A11A1545. MASON v. THE STATE.
(719 SE2d 581)

ELLINGTON, Judge.

A Banks County jury found William Mason guilty beyond a reasonable doubt of two counts of aggravated assault, OCGA § 16-5-21 (a) (2) (with a deadly weapon); two counts of possession of a destructive device with the intent to intimidate, OCGA § 16-7-88 (a); and one count of making a terroristic threat, OCGA § 16-11-37 (a). Following the denial of his motion for a new trial, Mason appeals, contending that the evidence was insufficient to sustain a conviction of possession of a destructive device with the intent to intimidate and

---

[8] Id.

[11] *Bardo*, supra at 105 (2).

that a merger of offenses precluded the imposition of separate sentences. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows the following. On August 17, 2007, Mason broke into the home of the victims (a man and a woman) and threatened to kill them if they did not pay him $30 that the female victim owed Mason for drugs. A short while later, the victims went to their landlord's house and again encountered Mason there. Mason had a homemade device that was constructed from a piece of three-quarter inch metal pipe twelve to eighteen inches in length, a cap that screwed on to one end of the pipe, and a bolt that penetrated the end cap to serve as a detonator or firing pin. Mason loaded a shotgun shell into the device. He pointed the open end of the device at the female victim's head and threatened to kill her if she did not pay him. He then pulled the male victim around to the side of the house and pointed the weapon at his face, saying, "I should kill you." About an hour later, Mason discharged the loaded weapon by causing the bolt to strike the shell's primer.

1. Mason contends that the device he allegedly pointed at the victims was not a destructive device within the terms of OCGA § 16-7-88 (a) and, therefore, that his conviction under that Code section cannot stand.

Pursuant to OCGA § 16-7-88 (a), it is unlawful for any person to "possess[ ], transport[ ], or receive[ ] . . . any destructive device or explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or to destroy any public building[.]" For this and other offenses codified in OCGA §§ 16-7-80 through 16-7-97, OCGA § 16-7-80 (4) defines a "[d]estructive device" in pertinent part as:

> *Any type of weapon by whatever name known which will* or may be readily converted to *expel a projectile by the action of an explosive* or other propellant, *through a barrel* which has a bore diameter of more than one-half inch in diameter; *provided, however, that such term shall not include a pistol, rifle, or shotgun suitable for sporting or personal safety purposes or ammunition*; a device which is neither designed or redesigned for use as a weapon; a device which, although originally designed for use as a weapon, is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; or surplus military ordnance sold, loaned, or

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

given by authority of the appropriate official of the United States Department of Defense[.]

(Emphasis supplied.) OCGA § 16-7-80 (4) (B).

Mason contends that, in enacting this subpart, the General Assembly opted not to limit the exclusion of any "pistol, rifle, or shotgun suitable for sporting or personal safety purposes" to guns made by industrial manufacturers. Rather, he contends, when a defendant is charged with possessing a destructive device under OCGA § 16-7-80 (4) (B), the State must prove that the device in question "could not be used in the same manner as a common pistol, rifle, or shotgun[.]" As a result, he contends, even though his device was homemade or improvised, and not manufactured by "Smith & Wesson, Remington, or Colt Arms," this exclusion applies to his device and, therefore, that his possession of the device with the intent to intimidate the victims[2] did not violate OCGA § 16-7-88 (a).

When the meaning of a statute is in issue, the role of the courts is "to ascertain the intent and purpose of the General Assembly in enacting the law in question and then to give that law the construction which will effectuate the legislative intent and purpose." (Citation omitted.) *State v. Smith*, 286 Ga. 409, 410-411 (688 SE2d 348) (2010).

> In this regard, a court must first focus on the statute's text. In order to discern the meaning of the words of a statute, the reader must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes. If the words of a statute, however, are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words. If, on the other hand, the words of the statute are ambiguous, then this Court must construe the statute, keeping in mind the purpose of the statute and "the old law, the evil, and the remedy." OCGA § 1-3-1 (a).

(Punctuation and footnotes omitted.) *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999). Further, we "construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation, punctuation and footnote omitted.) *O'Neal v. State*, 288

---

[2] For purposes of appeal, Mason does not contest the sufficiency of the evidence that he used his device with the intent to intimidate the victims.

726

Ga. 219, 220-221 (1) (702 SE2d 288) (2010). Finally, "because this is a criminal statute, it must be strictly construed against the State." (Punctuation and footnote omitted.) *Busch v. State*, 271 Ga. at 592.

OCGA § 16-7-80 (4) (B) *includes* "[a]ny type of weapon . . . which will . . . expel a projectile by the action of an explosive or other propellant[ ] through a barrel," that is, gun-like weapons. If we were to accept Mason's position that, because he pointed his device "at the victims in the same manner a person could point a store-bought pistol, rifle, or shotgun," his device is functionally indistinguishable from a pistol, rifle, or shotgun suitable for sporting or personal safety purposes and is thus *excluded* from the definition of a destructive device, then the exception would swallow the rule. *Singletary v. State*, 310 Ga. App. 570 (713 SE2d 698) (2011). Such a construction of the statute is illogical and untenable.

Accordingly, Mason's sufficiency argument fails.

2. (a) Mason contends that the State used the same evidence to prove the aggravated assault of each victim as it used to prove that he possessed a destructive device with the intent to intimidate, that is, his act of pointing his homemade weapon at each victim.[3] As a result, he contends, "under an actual evidence analysis, all the elements of the aggravated assaults are subsumed within the elements of the charges of possession of a destructive device with intent to intimidate." Thus, he contends, as to each victim those offenses merged (Count 9 with Count 11 and Count 10 with Count 12), and the trial court erred in imposing separate punishment for each count.

Where the same act or transaction constitutes a violation of two distinct statutory provisions, however, Georgia courts apply the "required evidence" test, not the "actual evidence" test, to determine whether one crime is included in the other under OCGA § 16-1-6 (1).[4] *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006). Under the required evidence test, neither offense is included in the other if "each [statutory] provision requires proof of a fact which the other does not." (Punctuation and footnote omitted.) Id. Consequently, when each of two statutes requires proof of an additional fact which the other does not, an acquittal or conviction under one statute does not exempt the defendant from prosecution

[3] Count 9 charged Mason with the aggravated assault of the female victim; Count 10 charged Mason with the aggravated assault of the male victim; Count 11 charged Mason with possession of a destructive device with the intent to intimidate the female victim; Count 12 charged Mason with possession of a destructive device with the intent to intimidate the male victim.

[4] A crime is included in another crime when "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged." (Punctuation omitted.) OCGA § 16-1-6 (1).

and punishment under the other, even though the charges are based on a single act. Id.

Each count of possession of a destructive device with the intent to intimidate required the State to prove that Mason possessed a weapon that will expel a projectile by the action of an explosive through a barrel which has a bore diameter of more than one-half inch in diameter and that Mason possessed such device with the intent to intimidate the victim.[5] Each count of aggravated assault required the State to prove that Mason intentionally used a device that, when used offensively against a person, is likely to result in serious bodily injury and that such act placed the victim in reasonable apprehension of immediately receiving a violent injury.[6] Each of these statutory provisions requires proof of a fact that the other does not require: that the weapon function in a certain way and have certain dimensions (possession of a destructive device) versus that the victim was conscious of the risk of immediately receiving a violent injury by Mason's use of an offensive weapon (aggravated assault).[7] Thus, there was no merger under the "required evidence" test.

Further, contrary to Mason's position, his act of *pointing* his homemade weapon at each victim was not the basis both for the aggravated assault counts and for the possession of a destructive device counts. The offense of possession of a destructive device as charged was complete when Mason *possessed* the weapon with the intent to intimidate each victim, even before Mason actually approached the victim and *used* the weapon to threaten him or her. *Louisyr v. State*, 307 Ga. App. 724, 731 (2) (706 SE2d 114) (2011) ("[I]f the underlying facts show that one crime was completed prior to the second crime, there is no merger.") (citation and punctuation omitted); *Garrett v. State*, 306 Ga. App. 420, 422 (b) (703 SE2d 666) (2010) (accord). For this reason as well, there was no merger.

(b) To the extent Mason contends that the two counts of possession of a destructive device merged, we note that the indictment charged Mason with possessing the destructive device with the

---

[5] See Division 1, supra.

[6] OCGA §§ 16-5-20 (a) (2) ("A person commits the offense of simple assault when he or she . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."); 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults: . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]").

[7] Cf. *Perez v. State*, 281 Ga. 175, 177 (2) (637 SE2d 30) (2006) (A conviction for an assault under OCGA § 16-5-20 (a) (2), which requires that the defendant's act place the victim in reasonable apprehension of immediately receiving a violent injury, cannot be sustained where the evidence establishes that the victim was dead or unconscious at the time of the defendant's act.); *Patterson v. State*, 192 Ga. App. 449, 452 (4) (385 SE2d 311) (1989) (accord).

intent that it would be used to intimidate one named individual victim in Count 11 and a different named individual victim in Count 12. The issue of "whether a course of conduct can result in multiple violations of the same statute . . . requires a determination of the 'unit of prosecution,' or the precise act or conduct that is being criminalized under the statute." (Punctuation and footnote omitted.) *State v. Marlowe*, 277 Ga. 383, 384 (1) (589 SE2d 69) (2003). In analyzing OCGA § 16-11-106,[8] the Supreme Court of Georgia held that, where, "during the course of one continuous crime spree," the defendant commits any crime against or involving the person of another against multiple victims, "[the] defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree[.]" *State v. Marlowe*, 277 Ga. at 386 (2) (c). Similarly, we conclude that, in a prosecution under OCGA § 16-7-88 (a), a defendant may be convicted separately for possession of a destructive device with the intent to intimidate as to each individual victim who was the specific target of such intent. Accordingly, there was no merger.

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 18, 2011.

*Donna A. Seagraves*, for appellant.

*J. Bradley Smith, District Attorney, Samuel E. Skelton, Assistant District Attorney*, for appellee.

---

[8] Any person who shall have on . . . his or her person a firearm or a knife . . . during the commission of . . . :

(1) Any crime against or involving the person of another;

(2) The unlawful entry into a building or vehicle;

(3) A theft from a building or theft of a vehicle;

(4) Any crime involving [illegal drugs as enumerated in the final two divisions in subsection (b) of the statute]
. . .

and which crime is a felony, commits a felony and, upon conviction thereof, shall be punished by confinement for a period of five years, such sentence to run consecutively to any other sentence. . . .