**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**May 1, 2014**

# In the Court of Appeals of Georgia

A14A0039. PETRO v. THE STATE.

BARNES, Presiding Judge.

After a bench trial, the trial court found John Tony Petro guilty of two counts of aggravated assault, two counts of terroristic threats, two counts of possession of a knife during the commission of a crime, and one count of family violence battery based on an altercation he had with his girlfriend and her ex-boyfriend. The trial court subsequently denied his motion for new trial. Petro appeals, challenging the sufficiency of the evidence. He also contends that his convictions for terroristic threats should have merged into his convictions for aggravated assault. For the reasons discussed below, we affirm.

Following a bench trial, we view the evidence in the light most favorable to the trial court's verdict. *Hinton v. State*, 319 Ga. App. 673 (738 SE2d 120) (2013). So viewed, the evidence showed that Petro lived with his girlfriend and her three

children at her residence in Effingham County. On the night in question, Petro and his girlfriend had been drinking and got in a heated argument over text messages that the girlfriend's ex-boyfriend had sent to her. The girlfriend's ex-boyfriend and her niece were at the residence during the argument.

During the argument, Petro's girlfriend left the residence at one point. She returned a little while later and went to lie down in the master bedroom. However, Petro followed her to the bedroom, cursed at her, and threw a drink on her. He then slapped his girlfriend in the face, forced her to the floor, and began choking her. After his girlfriend struggled free and told him to leave her alone, Petro left the bedroom.

Petro went to the kitchen and grabbed a butcher knife. The girlfriend's ex-boyfriend and her niece were sitting in the living room and saw Petro with the knife. When Petro began walking back to the bedroom, the ex-boyfriend attempted to intervene and suggested that Petro "take a walk with him." Petro pointed the knife at the ex-boyfriend and told him "to shut up and if he didn't, he was next." He also threatened the niece, warning her that "they'd find [her] floating up a river somewhere" if she tried to help.

Petro returned to the master bedroom, approached his girlfriend with the knife, threatened to kill her with it, and cut her in the face. He also threw his girlfriend

2

against a dresser several times when she "wouldn't do what he wanted [her] to do." Ultimately, the girlfriend was able to wrestle the knife from Petro and throw it behind the bed and nightstand. After the girlfriend took the knife away, Petro slapped her in the face and left the bedroom. The girlfriend later testified that she feared for her life during the attack.

The niece walked up to the bedroom door as Petro's girlfriend wrestled the knife away from him, and the niece saw Petro slap his girlfriend in the face before he walked out of the bedroom. After the attack ended, the girlfriend's ex-boyfriend ran from the residence and called the police.

When police officers arrived at the residence, the girlfriend initially denied that Petro had attacked her but later told the officers what had happened after they separated her from Petro. The officers found the knife where the girlfriend had thrown it behind the bed and nightstand, and the niece took photographs of the girlfriend's facial wound caused by the knife. While the officers were investigating the attack, Petro kept screaming that he loved his girlfriend and wanted to kiss her. The officers had the girlfriend's ex-boyfriend, who appeared to be "in fear for his life," crouch down behind a police car when they arrested Petro.

After his arrest, Petro wrote to his girlfriend from jail. Petro promised her that "[t]his will never happen again" and suggested that if "you and me tell the judge that we were both fighting the other, it will go easier in court because . . . if not, I'm going to state jail time."

Petro was indicted on two counts of aggravated assault for assaulting his girlfriend and her ex-boyfriend with the butcher knife, an object, which when used offensively against another, is likely to result in serious bodily injury; two counts of terroristic threats for threatening to kill his girlfriend and her ex-boyfriend; two counts of possession of a knife during the commission of a crime; and one count of family violence battery. Petro elected to be tried on these charges in a bench trial.

At the bench trial, Petro's girlfriend and her niece testified to the events as summarized above. The State also introduced photographs of the facial injury that Petro's girlfriend sustained from the butcher knife, the knife used in the attack, and the letters that Petro sent to his girlfriend from jail. The girlfriend's ex-boyfriend did not testify. After the State rested, Petro chose not to testify and did not call any defense witnesses. Based on the evidence presented, the trial court found Petro guilty of all the charged offenses. Petro filed a motion for new trial, which the trial court denied, leading to this appeal.

1. Petro contends that there was insufficient evidence to convict him of two counts of aggravated assault, two counts of terroristic threats, and two counts of possession of a knife during the commission of a crime.[1] When reviewing the sufficiency of the evidence,

> we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010). See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Applying this standard, we conclude that the evidence presented at the bench trial was sufficient to sustain Petro's convictions.

(a) *Aggravated Assault.* "A person may be found guilty of aggravated assault if the State proves (1) an assault and (2) aggravation by use of any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." (Citation and punctuation omitted.) *Myrick v. State*,

---

[1] Petro does not challenge his conviction for family violence battery.

__ Ga. App. __ (1) (Case No. A13A1973, decided Jan. 24, 2014). See OCGA § 16-5-21 (a) (2). The State may prove an assault by showing that the defendant "[a]ttempts to commit a violent injury to the person of another" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a). See *Lambert v. State*, __ Ga. App. __ (1) (Case No. A13A1860, decided Jan. 24, 2014). Here, the indictment alleged that Petro committed aggravated assault with a butcher knife "by moving toward [his girlfriend and her ex-boyfriend] while brandishing said knife."[2]

Petro's girlfriend testified that he entered the bedroom with the butcher knife, placed it to her face, and cut her with it, causing her to fear for her life. The girlfriend's testimony was sufficient to sustain Petro's conviction for committing aggravated assault against her as alleged in the indictment. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.");[3] *Lomax v. State*, 319 Ga. App. 693, 694 (1) (738 SE2d 152) (2013) (noting that "the testimony

---

[2] The aggravated assault averments in the indictment contained additional surplusage discussed infra in Division 2.

[3] Because the present case was tried in September 2010, the new Georgia Evidence Code does not apply. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

of the victim, standing alone, was sufficient to sustain the conviction" for aggravated assault). See also *Hartley v. State*, 299 Ga. App. 534, 534-535, 537 (1) (683 SE2d 109) (2009) (affirming aggravated assault conviction where defendant brandished butcher knife in front of victim); *Harris v. State*, 233 Ga. App. 696, 697 (1) (505 SE2d 239) (1998) (affirming aggravated assault conviction where defendant wounded victim in mouth with knife).

Although the girlfriend's ex-boyfriend did not testify, her niece testified that she saw Petro point the butcher knife at the ex-boyfriend when he tried to intervene. The niece also testified that the ex-boyfriend fled from the residence after being threatened with the knife and later crouched behind a police car "in fear for his life." The niece's testimony was sufficient to sustain Petro's conviction for committing aggravated assault against the ex-boyfriend as alleged in the indictment. See *McLeod v. State*, 245 Ga. App. 668, 669 (3) (538 SE2d 759) (2000) (testimony of eyewitness who saw victim fleeing from defendant with an ax raised over his head was sufficient to sustain aggravated assault conviction).

(b) *Terroristic Threats.* "A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence with the purpose of terrorizing another." (Citation and punctuation omitted.) *Maskivish v. State*, 276 Ga.

7

App. 701, 703 (2) (624 SE2d 160) (2005). See OCGA § 16-11-37 (a). A defendant cannot be convicted of terroristic threats based "on the uncorroborated testimony of the party to whom the threat is communicated." OCGA § 16-11-37 (a). "However, the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged." (Citation, punctuation, and footnote omitted.) *Hobby v. State*, 298 Ga. App. 52, 54 (1) (679 SE2d 72) (2009). Here, the indictment alleged that Petro made terroristic threats against his girlfriend and her ex-boyfriend by threatening to murder them.

The girlfriend testified that Petro threatened to kill her. Her testimony was corroborated by her niece's testimony regarding Petro's aggressive conduct leading up and surrounding the threat, as well as by the photographs of the facial injury sustained by the girlfriend. See *Hobby*, 298 Ga. App. at 54 (1) (testimony of the victim's son as to the defendant's violent behavior surrounding the threat and evidence of victim's injuries provided sufficient corroboration of the threat). The evidence thus was sufficient to sustain Petro's terroristic threat conviction relating to his girlfriend. See id.

The girlfriend's niece testified that she saw Petro holding the knife and threatening the ex-boyfriend that "he was next" if he attempted to intervene, and her testimony was sufficient to sustain Petro's terroristic threat conviction relating to the ex-boyfriend. As we have explained, "there is no requirement that the victim testify for there to be sufficient evidence to sustain a conviction for terroristic threats," and the statute "does not require corroboration of the testimony of a non-party." (Citation and punctuation omitted.) *Worthington v. State*, 257 Ga. App. 10, 11 (570 SE2d 85) (2002).

(c) *Possession of a Knife During the Commission of a Crime.* "[O]ne who commits a crime against the person of another while having on or within arm's reach of his or her person a . . . knife having a blade of three or more inches in length is guilty" of possession of a knife during the commission of a crime. *Mitchell v. State*, 283 Ga. 341, 342 (1) (659 SE2d 356) (2008). See OCGA § 16-11-106 (b). Here, the indictment alleged that Petro committed the offense by having the butcher knife in his possession during his commission of the aggravated assaults against his girlfriend and her ex-boyfriend.

As previously discussed, the girlfriend and her niece testified about Petro's assault of the girlfriend and her ex-boyfriend with the butcher knife. While no

9

witnesses testified to the length of the knife, the knife itself was introduced into evidence, and the trial court sitting as the trier of fact "was authorized to use its senses to determine if the knife blade was of the requisite length." *Mitchell*, 283 Ga. at 342 (1). Hence, the evidence was sufficient to sustain Petro's convictions for possession of a knife during the commission of a crime.

2. Petro also contends that his convictions for terroristic threats should have merged into his convictions for aggravated assault for sentencing purposes. Again, we disagree.

"It is axiomatic that Georgia law bars conviction for a crime that arises from the same criminal conduct included as a matter of fact or as a matter of law in another crime for which the defendant has been convicted." (Citation and punctuation omitted.) *Crowley v. State*, 315 Ga. App. 755, 759 (3) (728 SE2d 282) (2012). When the same act or transaction constitutes a violation of two distinct criminal statutes, we apply the "required evidence" test adopted in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006), to determine whether one crime is included in the other pursuant to OCGA § 16-1-6 (1).[4]

_____

[4] OCGA § 16-1-6 (1) provides:
An accused may be convicted of a crime included in a crime charged in the indictment or accusation. A crime is so included when: . . . It is

Under the required evidence test, neither offense is included in the other if each statutory provision requires proof of a fact which the other does not. Consequently, when each of two statutes requires proof of an additional fact which the other does not, an acquittal or conviction under one statute does not exempt the defendant from prosecution and punishment under the other, even though the charges are based on a single act.

(Citations, punctuation, and footnote omitted.) *Mason v. State*, 312 Ga. App. 723, 726-727 (2) (a) (719 SE2d 581) (2011).

Applying this test, we conclude that no merger occurred in this case. To prove the two counts of aggravated assault, the State had to show that Petro committed an assault upon his girlfriend and her ex-boyfriend with the knife, an object, which when used offensively against another, is likely to result in serious bodily injury. See OCGA § 16-5-21 (a) (2). To prove the two counts of terroristic threats, the State had to show that Petro threatened to murder his girlfriend and her ex-boyfriend, with the purpose of terrorizing them. See OCGA § 16-11-37 (a). Thus, the crimes of aggravated assault required proof of an assault with a knife upon the girlfriend and

established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged[.]

11

ex-boyfriend, while the crimes of terroristic threats required proof that Petro threatened to murder them. As such, the crimes of aggravated assault and terroristic threats required the State to prove at least one fact different from the other and no merger occurred. See *Vaughn v. State*, 301 Ga. App. 55, 59-60 (4) (686 SE2d 847) (2009), overruled in part on other grounds, *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011) (convictions for aggravated assault with a knife and for making terroristic threat that defendant would kill the victim did not merge under "required evidence" test); *McQueen v. State*, 184 Ga. App. 630, 631-632 (2) (362 SE2d 436) (1987) (simple assault was not lesser included offense of making terroristic threats); *Echols v. State*, 134 Ga. App. 216, 218 (4) (213 SE2d 907) (1975) (aggravated assault and terroristic threats convictions did not merge).

It is true, as Petro notes in his brief, that the indictment in this case alleged in its entirety that Petro committed aggravated assault with a butcher knife "by moving toward [his girlfriend and her ex-boyfriend] while brandishing said knife *and threatening to kill* [them]." (Emphasis supplied.) Petro suggests that, given the specific way in which the indictment alleged that the aggravated assaults were committed and had to be proven at trial, the terroristic threats were lesser included

12

offenses and thus merged into the aggravated assaults as a matter of fact. We are unpersuaded.

"In applying the *Drinkard* test, we consider the crimes as indicted and not every possible manner of committing a particular crime." *Franks v. State*, __ Ga. App. __ (3), n. 8 (Case Nos. A13A0118 and A13A0932, decided on Dec. 16, 2013). See *Wilson v. State*, 285 Ga. 224, 226 (2) (675 SE2d 11) (2009); *Herrera v. State*, 306 Ga. App. 432, 435 (3) (702 SE2d 731) (2010). But that rule does not change the result in this case. As we have explained, because the aggravated assault statute "requires proof of only one act, inclusion in the indictment of more than one such act is mere surplusage, which is unnecessary to constitute the offense, need not be proved, and may be disregarded." (Punctuation and footnote omitted.) *Brown v. State*, 313 Ga. App. 907, 908 (1) (723 SE2d 115) (2012). Here, evidence of Petro "moving toward [his girlfriend and her ex-boyfriend] while brandishing [the] knife" as alleged in the indictment was sufficient to sustain his convictions for aggravated assault, separate and distinct from any verbal threat made by him to kill the victims. See *Hartley*, 299 Ga. App. at 534-535, 537 (1) (evidence that defendant brandished butcher knife in front of victim was sufficient to sustain aggravated assault conviction). It follows that the language in the aggravated assault counts of the indictment referring to a "threat

to kill" the girlfriend and ex-boyfriend constituted an "unnecessary specification of a legally unnecessary fact,"[5] and was "mere surplusage" that was not required for proving those offenses. See *Brown*, 313 Ga. App. at 908 (1) (evidence that defendant pulled out a knife in front of victim was sufficient to sustain aggravated assault conviction, and thus language in the same count of the indictment that defendant also attempted to cut the victim with the knife was mere surplusage and did not have to be proved). As such, the State was not required to prove a "threat to kill" the girlfriend and ex-boyfriend to establish both the offenses of aggravated assault and terroristic threats, and so the crimes of terroristic threats were not mere lesser included offenses of the crimes of aggravated assault in this case.

Lastly, Petro cites to *Zilinmon v. State*, 234 Ga. 535, 538-539 (8) (216 SE2d 830) (1975), and *In the Interest of C.S.G.* , 241 Ga. App. 37, 38-39 (2) (525 SE2d

---

[5] (Punctuation and footnote omitted). *Quiroz v. State*, 291 Ga. App. 423, 425-426 (1) (662 SE2d 235) (2008) (language in indictment alleging that defendant committed aggravated assault upon the victim with a knife "by holding a knife to [his] neck" was "an unnecessary specification of a legally unnecessary fact" because State did not have to prove that the knife was actually held up to the victim's neck; it was sufficient that State proved that defendant only pointed the knife at the victim). See also *In the Interest of J. A. C.*, 291 Ga. App. 728, 730 (2) (662 SE2d 811) (2008) (language in indictment charging defendant with "hitting" victim with baton was immaterial; it was sufficient that State proved that defendant "advanced on" the victim while holding the baton "before a hand-to-hand struggle over the baton").

14

106) (1999), to support his argument that his convictions should have merged. But *Zilinmon* applied the now-defunct "actual evidence" test for analyzing the merger issue and was expressly overruled by our Supreme Court in *Drinkard*, 281 Ga. at 217, n. 38. Likewise, *In the Interest of C.S.G.* was decided before *Drinkard* and used language consistent with the "actual evidence" test in analyzing whether terroristic threats was a lesser included offense of aggravated assault; thus, Petro's reliance on that case is likewise misplaced. See *Stuart v. State*, 318 Ga. App. 839, 842 (734 SE2d 814) (2012) (discussing the "actual evidence" test and contrasting it with the "required evidence" test adopted in *Drinkard*).

*Judgment affirmed. Boggs and Branch, JJ., concur.*