**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 30, 2018**

# In the Court of Appeals of Georgia

A18A1253. THE STATE v. WILKERSON.

BROWN, Judge.

A jury convicted Jason Edwin Wilkerson of five counts each of aggravated assault with a deadly weapon and aggravated assault with a motor vehicle, but acquitted him of three counts of kidnapping. The trial court sentenced him consecutively on the ten counts of aggravated assault to a total of 60 years to serve followed by 140 years of probation. Wilkerson filed an amended motion for new trial asking the trial court to modify his sentence, and challenging the sufficiency of the evidence to support his convictions. The trial court granted the motion in part, reducing Wilkerson's sentence, and finding insufficient evidence to support three of the five counts of aggravated assault with a deadly weapon. The trial court also granted a new trial under the general grounds, finding that the three aggravated

assault convictions with a deadly weapon were against the weight of the evidence and the principles of equity and justice, and that there was insufficient evidence to find Wilkerson guilty of those three counts. The State appeals. For the reasons set forth below, the appeal is dismissed in part; the court's order is reversed in part, vacated in part, and the vacated portion of the order is remanded with direction.

The evidence viewed in the light most favorable to the jury's verdict, see *State v. Sims*, 296 Ga. 465 (1) (769 SE2d 62) (2015), shows that on June 24, 2013, Wilkerson's sister and her boyfriend were riding in a car with the sister's three young children, ages three, two, and one.[1] The car was stopped on the side of the road when the boyfriend and sister saw Wilkerson riding as a passenger in a red pick-up truck traveling towards them. The boyfriend and sister began driving away and heard the truck revving its engine. The truck stopped, "kicked the gas," and then plowed into the car, pushing it into a ditch and destroying two tires and the driver's side door.[2] The sister testified at trial that she could not really see what Wilkerson was doing

---

[1] The two older children were in the backseat and the youngest child was on the sister's lap in the front passenger seat.

[2] In her statement to police given that evening, the sister stated that when they saw the truck, the boyfriend swerved their vehicle onto the shoulder of the road before the truck plowed into them. She also stated that Wilkerson exited the vehicle and started chasing the car on foot.

because she was "trying to hold onto [her] child" but that Wilkerson chased them down with the truck and that her two-year-old child sustained cuts to his face when the car speaker hit his nose after the impact. As the boyfriend tried to drive the car out of the ditch, he and the sister noticed the truck drive up behind them with Wilkerson hanging out the passenger side brandishing a shotgun. Wilkerson pointed the gun at the boyfriend and told him to pull over or he would "blow his brains out." The boyfriend pulled over and Wilkerson exited the truck, pointed the gun at the boyfriend's face, and told the sister to get the kids out of the car.[3] In his statement to police, taken that evening, the boyfriend stated that Wilkerson jumped out of the truck with the gun "cussin[g] and makin[g] threats." Wilkerson also pulled the

[3] The boyfriend testified that Wilkerson believed that the boyfriend had taken "the children by force from [their grandmother, Wilkerson's mother,] and manhandled his mother. . . . [Wilkerson] did what any kind of family man would do to try to protect his nephews. . . . All [Wilkerson] was trying to do was get the kids and get them back to [their grandmother]." At trial, the boyfriend explained that he did not want Wilkerson prosecuted because "it was [all] a misunderstanding." Ever since the date of the incident, "[Wilkerson] has been right there around us, we've all sat down and ate dinner as a family." The sister echoed this testimony. According to the boyfriend and sister, the children live with Wilkerson and his mother at Wilkerson's home, and Wilkerson helps to raise them because the sister is homeless. At trial and during the motion for new trial hearing, evidence was presented that (a) the sister had custody of the children, but that the Early County Department of Family and Children Sevices had an "open investigation involving the [children]"; (b) the sister had disappeared with the father of her oldest child the night before the incident; and (c) the sister had a drug problem and was in an abusive relationship with the boyfriend.

hammer back on the gun as it was aimed at the boyfriend and then moved to the "middle in front of [the] car screaming[,] get the fucking kids out." Wilkerson then went to the passenger side of the car and got the children out and took them back to their grandmother. The boyfriend and sister drove the car to a friend's farm, called police, and then ran, entering and hiding in a pond until the police arrived because the boyfriend was "scared as hell of all of it."

At trial, the boyfriend testified that "the gun stayed pointed at me. [Wilkerson] never pointed it at the kids." When asked if Wilkerson had the gun in his hand when the kids were getting out of the car, the boyfriend testified, "[i]f he did, it wasn't never pointed at the kids. He never had the intent of hurting the children at all." The sister testified that Wilkerson "wasn't pointing [the gun] at us, he was pointing it at the car." When asked by the State to clarify whether the gun, which was pointed at the car was also pointed at the occupants of the car, the sister responded, "I don't know, I guess so if we're in the car." The State introduced into evidence the sister's statement to police following the incident. In that statement, the sister wrote that Wilkerson pointed the gun at her and at the car. At trial, the sister testified that when she handed the baby to Wilkerson, he was not holding a gun.

4

The State indicted Wilkerson on thirteen counts, including three counts of kidnapping (Counts 1, 2, and 3), and five counts each of aggravated assault with a deadly weapon (Counts 4, 5, 6, 7, and 8) and aggravated assault with a motor vehicle (Counts 9, 10, 11, 12, and 13). Counts 6, 7, and 8 alleged that "Wilkerson [made] an assault upon the person of [each child], with a deadly weapon, to-wit: a gun." Following a hearing, the trial court granted Wilkerson's amended motion for new trial as to Counts 6, 7, and 8, finding as follows:

> Although there was testimony that [Wilkerson] pointed a firearm at "the car," there was no evidence that [Wilkerson] ever pointed a gun at, or threatened, any of the children. Nor was there any evidence that the children felt threatened by the firearm or were aware in any way that a firearm had been pointed at them. The fact that a victim is unaware that a firearm has been pointed at the victim precludes a conviction of aggravated assault. *State v. Harlachen*, 336 Ga. App. 9, 783 SE2d 411 (2016).
>
> The [c]ourt finds that the convictions for Counts 6, 7, and 8, are strongly against the weight of the evidence, are contrary to the evidence and the principles of equity and justice, and there was not sufficient evidence to allow a rational trier of fact to find [Wilkerson] guilty of these Counts. OCGA §§ 5-5-20 and 21; *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

The trial court also found the original sentence to be excessive, and modified it to seven concurrent terms of twenty years with five to serve. The trial court entered an amended final disposition, memorializing the new sentence and indicating "New Trial Granted" as to Counts 6, 7, and 8.

1. Pursuant to OCGA § 5-7-1 (a) (8), the State asks this Court to review the trial court's grant of the motion for new trial on the ground that the evidence was legally insufficient for the jury to convict Wilkerson of Counts 6, 7, and 8 of the indictment. In particular, the State argues that the trial court erred in ruling that there was insufficient evidence that "the children felt threatened by the firearm or were aware in any way that a firearm had been pointed at them." We agree.

Because this portion of the trial court's order is based on the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the trial court was not authorized to act as the thirteenth juror and could neither weigh the evidence nor exercise its own discretion. See *State v. Jackson*, 294 Ga. 9, 10 (748 SE2d 902) (2013).

> The standard of *Jackson v. Virginia* for assessing the legal sufficiency of the evidence is different than the discretion given a trial court in an evidentiary challenge based upon the general grounds. Indeed, evidence may be less than overwhelming, but still sufficient to sustain a

conviction. When we consider the legal sufficiency of the evidence, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact. Instead, we must view the evidence in the light most favorable to the verdict, and we inquire only whether any rational trier of fact might find beyond a reasonable doubt from that evidence that the defendant is guilty of the crimes of which he was convicted.

(Citations and punctuation omitted.) *State v. Cash*, 302 Ga. 587, 592 (807 SE2d 405) (2017).

"A person may be found guilty of aggravated assault if the State proves (1) an assault and (2) aggravation by use of any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." (Citation and punctuation omitted.) *Petro v. State*, 327 Ga. App. 254, 257 (1) (a) (758 SE2d 152) (2014). See also OCGA § 16-5-21 (a) (2). "The State may prove an assault by showing that the defendant attempt[ed] to commit a violent injury to the person of another or commit[ed] an act which place[d] another in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20 (a)." (Citation and punctuation omitted.) *Petro*, 327 Ga. App. at 257 (1) (a). See also *Veasey v. State*, 322 Ga. App. 591, 594-595 (1) (c) (745 SE2d 802) (2013). "The

7

indictment only specifies that [Wilkerson] made an 'assault' with a deadly weapon, and such general language sufficiently charges an assault by way of either manner contained in the assault statute." (Citation and punctuation omitted.) *Thompson v. State*, 277 Ga. App. 323, 324 (1) (626 SE2d 825) (2006).

As we reiterated in *Veasey*, "[a] pistol is a deadly weapon. Indeed, the presence of a gun would normally place a victim in reasonable apprehension of being injured violently. Whether the victims have been placed in reasonable apprehension of injury is a question of fact for the jury to determine." (Citation and punctuation omitted.) 322 Ga. App. at 595 (1) (c). "The state of mind of the victim of an assault is a question of fact, which may be established by circumstantial evidence." (Citation omitted.) *Howard v. State*, 288 Ga. 741, 742 (1) (707 SE2d 80) (2011). "Moreover, evidence of the state of mind of one victim can be relevant to the state of mind of other victims." (Footnote omitted.) *Lemming v. State*, 272 Ga. App. 122, 125 (1) (612 SE2d 495) (2005), disapproved on other grounds by *Miller v. State*, 285 Ga. 285, 287, n. 1 (676 SE2d 173) (2009). Indeed, neither a victim's adamant denial of apprehension nor his or her lack of testimony will preclude conviction when there is some circumstantial evidence from which the jury could infer a perception of danger. See *Veasey*, 322 Ga. App. at 594-595 (1) (c); *Lemming*, 272 Ga. App. 125-127 (1).

8

In *Veasey*, we found sufficient evidence to support the defendant's four aggravated assault convictions against a mother and her three children, even though the youngest child did not testify. 322 Ga. App. at 594-595 (1) (c). In that case, the evidence showed that the children started screaming when they saw the gun; the mother testified that she was "'very fearful'"; one child testified that she was "'sad'"; and the second child testified that he was "'scared'" by what he believed to be a gun. Id. at 594 (1) (c).

In *Lemming*, the defendant was convicted of two counts of aggravated assault with a deadly weapon for holding a knife to the neck of one victim and threatening her, while the second victim was close by and went after the defendant with a broom. 272 Ga. App. at 122-123 (1). The first victim testified that she was terrified and thought she was going to die, while the second victim testified that he did not feel threatened by the knife. Id. at 126-127 (1). We noted that "[t]he fact that [the defendant] jabbed the tiny knife at [the second victim] as well as at [the first victim] is important because the state of mind of one victim is evidence of the state of mind of another only when the weapon is pointed at all of the victims." Id. at 126 (1). We concluded that there was direct evidence that the second victim had no perception of a threat from the knife, finding that

9

> [i]f we were weighing the evidence, we might find that this positive evidence that [the second victim] did not perceive the possibility that he would be injured outweighed the circumstantial evidence that he did. *But* on appeal we do not weigh evidence or determine witness credibility; we only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Emphasis supplied.) Id. at 127 (1) (additionally finding sufficient evidence to sustain the aggravated assault conviction against the second victim because he sustained a "violent, albeit, superficial, injury").

In this case, there is some circumstantial evidence from which the jury could infer a perception of danger by the children sufficient to support Wilkerson's convictions for aggravated assault with a deadly weapon against the children even though, like the youngest child in *Veasey*, the children did not testify. As recited above, the evidence showed that the truck in which Wilkerson was riding revved its engine and hit the gas before plowing into the vehicle in which the children were riding, pushing it into a ditch and destroying two tires and the driver's side door, while the sister gripped the youngest child in her lap. The truck then drove up behind the vehicle in which the children were riding while Wilkerson hung out the passenger side brandishing a shotgun which he pointed at the car and then held up to the

10

boyfriend's face, screaming that he would "blow his brains out." Still holding the shotgun, Wilkerson then stood in front of the car screaming at the sister and boyfriend to get the "fucking kids" out of the car. After this experience, the mother and boyfriend were so terrified they hid in a pond. While there is no *direct* evidence that the children were injured or that they were in reasonable apprehension of immediately receiving a violent injury, there is ample evidence that the sister and boyfriend were terrified of being harmed and the jury could have inferred that the children were aware of the totality of Wilkerson's actions and similarly terrified. As we indicated in *Lemming*, "the state of mind of one victim is evidence of the state of mind of another only when the weapon is pointed at all of the victims" – as was the case here. The boyfriend and sister's actions during the incident and immediately after, coupled with the boyfriend's statement that he was "scared as hell of all of it" and the testimony that Wilkerson pointed the gun at the car in which the children were riding, shortly after purposefully slamming into their vehicle with a truck, was sufficient to find that all five victims had a reasonable apprehension of harm. See *Jackson v. State*, 251 Ga. App. 578, 579 (1) (554 SE2d 768) (2001) (sufficient evidence where gun pointed at all three victims, but only one victim testified that he was afraid he would be shot). "Further, the presence of a deadly weapon would normally place a victim

11

in reasonable apprehension of being injured violently." (Punctuation and footnote omitted.) Id.

While the trial court in its order reasoned that Wilkerson could not be convicted of aggravated assault because it found no evidence that the children were aware that a firearm had been pointed at them, this conclusion was erroneous. As noted above, when considering a motion for new trial based on the sufficiency of the evidence, a trial court is not authorized to act as the thirteenth juror and can neither weigh the evidence nor exercise its own discretion. See *Jackson*, 294 Ga. at 10. Construing the evidence in favor of the verdict, the jury could have found that the children were aware of the aggravated assault. See *Gross v. State*, 259 Ga. 627, 629 (5) (385 SE2d 674) (1989) (noting that jury could have found that victim was awake and aware of aggravated assault even though medical examiner testified that he was probably asleep), disapproved on other grounds by *Duckworth v. State*, 268 Ga. 566 (492 SE2d 201) (1997). Accordingly, we reverse the trial court's ruling that the evidence was insufficient to sustain Wilkerson's convictions for Counts 6, 7, and 8.

2. Wilkerson contends that the State fails to enumerate as error the trial court reversal of Counts 6, 7, and 8 on the general grounds. On the contrary, given the wording of this portion of the trial court's order, we find that the State implicitly

challenges this ruling in its claim that the trial court erred in finding the evidence insufficient to sustain the three convictions.

"It has long been the rule in this state that the trial judge is vested with the strongest of discretions to review the case and to set the verdict aside if he is not satisfied with it." (Citations and punctuation omitted.) *Manuel v. State*, 289 Ga. 383, 386 (711 SE2d 676) (2011). See also OCGA §§ 5-5-20 and 5-5-21. "These statutes afford the trial court broad discretion to sit as a 'thirteenth juror' and weigh the evidence on a motion for new trial alleging these general grounds." (Citation and punctuation omitted.) *Choisnet v. State*, 292 Ga. 860, 861 (742 SE2d 476) (2013). We review a trial court's ruling under OCGA §§ 5-5-20 and 5-5-21 for an abuse of discretion; OCGA § 5-5-50 provides that "[t]he first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the [trial court] abused [its] discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." But, "[t]he court's discretion should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." (Citation and punctuation omitted.) *State v. Reid*, 331 Ga. App. 275, 278 (770 SE2d 665) (2015).

13

In *Choisnet*, supra, the defendant moved for a new trial asserting the general grounds. 292 Ga. at 861. The trial court reviewed the evidence under *Jackson v. Virginia* and denied the motion, concluding "that [it] was more than sufficient to allow a rational trier of fact to find [defendant] guilty beyond a reasonable doubt but mentally ill of the offense charged." Id. The defendant appealed and our Supreme Court vacated the ruling and remanded the case for consideration of the motion under the proper legal standard, finding that "a trial court does not fulfill its duty to exercise its discretion when it applies the standard set out in *Jackson v. Virginia* to the statutory grounds for new trial." Id. See also *Wiggins v. State*, 330 Ga. App. 205, 211 (c) (767 SE2d 798) (2014).

The trial court here similarly applied the standard set out in *Jackson v. Virginia* when it granted Wilkerson's motion for new trial under the general grounds, while simultaneously tracking the language of OCGA §§ 5-5-20 and 5-5-21, which adopts the discretionary standard. By so ruling, the trial court conflated the legal issues.

> [T]he use of the phrase "sufficient evidence," which echoes the appellate standard of *Jackson v. Virginia*, . . . denotes that the trial court failed to apply its discretion, as the determination if there is sufficient evidence to support the verdict is a matter of law, not discretion. . . . [T]he sufficiency of the evidence standard and the discretionary standard given to the trial court pursuant to OCGA § 5-5-21 address two distinct

14

legal issues, illustrated by the fact that the double jeopardy clause applies when a court finds the evidence insufficient, but not when a court holds that the verdict was against the weight of the evidence.

(Citations and punctuation omitted.) *Manuel*, 289 Ga. at 386-387 (2).

Given the wording of the trial court's order and its finding with regard to the sufficiency of the evidence as discussed in Division 1, supra, we are unable to determine which standard the trial court applied to its ruling under the general grounds. Accordingly, we vacate this ruling and remand the case to the trial court for reconsideration of the general grounds in light of this opinion.

3. The State challenges the trial court's modification of Wilkerson's sentence contending that the original sentence imposed by the judge presiding over the trial was "within the minimum and maximum sentences prescribed by law" under OCGA § 17-10-1 (a) (1). Wilkerson contends that the State has no right to appeal the sentence modification because it is not enumerated as an "appealable issue" under OCGA § 5-7-1. We agree.

"Appeals by the State in criminal cases are construed strictly against the State and the State may not appeal any issue in a criminal case, whether by direct or discretionary appeal, unless that issue is listed in OCGA § 5-7-1." (Citations and

punctuation omitted.) *State v. Cash*, 298 Ga. 90, 91 (1) (a) (779 SE2d 603) (2015).

See also *State v. Land-O-Sun Dairies, Inc*., 204 Ga. App. 485, 486 (419 SE2d 743)

(1992). The grant of a request to modify a sentence is not one of the issues listed in

OCGA § 5-7-1 as an issue appealable by the State. The fact that the trial court

included the sentence modification in its order granting Wilkerson's motion for new

trial does not render the issue directly appealable as it has long been established that

alleged irregularities in a sentence do not authorize the grant of a new trial. See

*Wilson v. State*, 84 Ga. App. 703, 708 (5) (67 SE2d 164) (1951). Cf. *State v. Hasson*,

334 Ga. App. 1, 3 (1) (778 SE2d 15) (2015) ("[t]here is no magic in nomenclature,

and we judge pleadings, motions and orders not by their name but by their function

and substance, being always mindful to construe such documents in a manner

compatible with the best interests of justice") (citation and punctuation omitted). The

State's appeal of the modified sentences imposed on Counts 4, 5, 9, 10, 11, 12, and

13 is therefore dismissed for lack of jurisdiction.

For the reasons outlined above, we reverse the trial court's ruling as to the

sufficiency of the evidence on Counts 6, 7, and 8. We vacate its ruling on the general

grounds as applied to those counts and remand the case for the trial court to

reconsider – utilizing the correct legal standard – whether a new trial is warranted

16

under the general grounds as to Counts 6, 7, and 8. We dismiss for lack of jurisdiction the State's appeal of the modified sentences imposed on Counts 4, 5, 9, 10, 11, 12, and 13.

*Judgment reversed in part, and vacated in part, and case remanded with direction. Appeal dismissed in part. Miller, P. J., and Goss, J., concur.*